[Civ. No. 16727. Fourth Dist., Div. One. Nov. 16, 1977.]

FRANK HOGYA, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
NATIONAL MEAT PACKERS, INC., et al., Real Parties in Interest.

124

**COUNSEL**

William J. Bauer and George J. Schultz for Petitioner.

Evelle J. Younger, Attorney General, Herschel T. Elkins and Albert Norman Shelden, Deputy Attorneys General, as Amici Curiae for Petitioner.

No appearance for Respondent.

Seltzer, Caplan, Wilkins & McMahon, Gerald L. McMahon, Howard J. Barnhorst II and Sandra D. Churchill for Real Parties in Interest.

OPINION

BROWN (Gerald) P. J.—Petitioner seeks a writ of mandate to compel respondent court to vacate its order dismissing his suit as a class action and to grant his motion for class certification.

According to the complaint in the underlying action, National Meat Packers, Inc., and other real parties in interest and their agents, sold falsely upgraded beef to Navy commissaries in San Diego County. The beef was represented as being of "choice" quality when in fact it was only of "good" quality.

Frank Hogya, petitioner, is one member of the group of approximately 350,000 consumers who purchased falsely upgraded beef from the commissaries. Seeking compensatory and punitive damages and injunctive relief on behalf of himself and other consumers similarly situated, he brought a class action against the real parties in interest pursuant to the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.).

Civil Code section 1780,[1] subdivision (a), provides: "(a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain any of the following: (1) Actual damages, but in no case shall the total award of damages in a class action be less than three hundred dollars ($300). (2) An order enjoining such methods, acts, or practices. (3) Punitive damages. (4) Any other relief which the court deems proper."

Section 1770 declares in pertinent part: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . (g) Representing that goods or services are of a particular standard, quality,

---

[1]Unless otherwise noted, statutory references are to sections of the Civil Code.

or grade, or that goods are of a particular style or model, if they are of another." These sections clearly authorize Hogya to bring a consumer action against the real parties in interest.

Section 1781 establishes the circumstances under which a court may allow a consumer suit to proceed as a class action and the procedure to be followed (*Vasquez* v. *Superior Court,* 4 Cal.3d 800, 817 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]). It provides in part:

"(a) Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.

"(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist: (1) It is impracticable to bring all members of the class before the court. (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. (4) The representative plaintiffs will fairly and adequately protect the interests of the class.

"(c) If notice of the time and place of the hearing is served upon the other parties at least 10 days prior thereto, the court shall hold a hearing, upon motion of any party to the action which is supported by affidavit of any person or persons having knowledge of the facts, to determine if any of the following apply to the action: (1) A class action pursuant to subdivision (b) is proper. (2) Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class. (3) The action is without merit or there is no defense to the action.

"A motion based upon Section 437c of the Code of Civil Procedure shall not be granted in any action commenced as a class action pursuant to subdivision (a)."

In the matter before us, the court held several hearings, in accordance with subdivision (c) of section 1781, to determine if a class action was proper. On December 14, 1976, at the conclusion of its third hearing, the court ruled, among other things, that petitioner's motion to certify the class action would be granted. Then, on its own motion the court

reopened the hearing to reconsider its ruling in light of *Blue Chip Stamps* v. *Superior Court,* 18 Cal.3d 381 [134 Cal.Rptr. 393, 556 P.2d 755].

After further briefing and oral argument the trial court reversed its previous ruling and denied petitioner's motion for class certification. The court issued findings of fact and conclusions of law in conjunction with its determination. The first four conclusions of law closely track the requirements of section 1781, subdivision (b).[2] In addition, the court concluded denial of class relief would result in advantage to the real parties in interest, forms of recovery were available which would accomplish justice, deterrence of the practices complained of was desirable and could be accomplished by the award of actual and punitive damages, and notice by publication (Civ. Code, § 1781, subds. (d) and (c)) would suffice.

Nevertheless, the court refused to certify the class, apparently for reasons expressed in its fifth conclusion of law: "Substantial benefits will not accrue to the litigants, the class, the public and the courts by permitting this action to be maintained as a class action. It is not probable that a high percentage of members of the class will come forward ultimately and prove separate claims to a portion of the total recovery; any potential recovery to the individual purchasers of meat would be small and would not justify the time and expense needed to accomplish same."

Hogya petitioned this court for a writ of mandate to compel respondent court to certify the class. The Attorney General filed an amicus curiae brief on his behalf, and we issued an order to show cause.

The principal question is whether section 1781, subdivision (b), establishes exclusive criteria for class certification in suits brought

[2]These conclusions state:

I. "It would be impracticable to bring all members of the asserted class before the Court" ["It is impracticable to bring all members of the class before the court." (Civ. Code, § 1781, subd. (b)(1).)]

II. "The questions of law or fact common to the asserted class are substantially similar and predominate over the questions affecting the individual members." ["The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members." (Civ. Code, § 1781, subd. (b)(2).)]

III. "The claims and defenses of the plaintiff herein are typical of the claims and defenses of the asserted class." ["The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class." (Civ. Code, § 1781, subd. (b)(3).)]

IV. "Plaintiff would fairly and adequately protect the interests of the asserted class." ["The representative plaintiffs will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b)(4).)]

pursuant to the Consumers Legal Remedies Act. Before turning to the main question, however, we explain our willingness to employ a prerogative writ to review the order before us.

Petitioner asserts *Blue Chip Stamps v. Superior Court, supra,* 18 Cal.3d 381, holds mandamus is appropriate to review an interlocutory order concerning class certification. Real parties in interest, relying on the same case, contend writs should be employed only to review orders *certifying* actions as proper class actions, and not orders *denying* such certification. "Generally, a writ [of mandate] will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance. [Citations.]" (*Payne v. Superior Court,* 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].)

It is the petitioner's burden to establish the inadequacy of other relief. (*Phelan v. Superior Court,* 35 Cal.2d 363, 366 [217 P.2d 951]; *Running Fence Corp. v. Superior Court,* 51 Cal.App.3d 400, 408-409 [124 Cal.Rptr. 339]; *Pettis v. Municipal Court,* 12 Cal.App.3d 1029, 1032 [91 Cal.Rptr. 263].)

Where there is a right to an immediate review by appeal, that remedy is considered adequate unless petitioner can show some special reason why it is rendered inadequate by the particular circumstances of his case (*In re Marriage of Skelley,* 18 Cal.3d 365, 369 [134 Cal.Rptr. 197, 556 P.2d 297]; *Phelan v. Superior Court, supra,* 35 Cal.2d 363, 370; *Lohr v. Superior Court,* 111 Cal.App.2d 231, 234-235 [244 P.2d 5]).

Where an order is not appealable, but is reviewable only upon appeal from a later judgment, various factors must be considered in evaluating the adequacy of the appellate remedy (*Phelan v. Superior Court, supra,* 35 Cal.2d 363, 370). Such factors include, without being limited to, the expense of proceeding with trial (*id.*), prejudice resulting from delay (*id.*), inordinate pretrial expenses (see *San Diego Unified Port Dist. v. Superior Court,* 67 Cal.App.3d 361, 364-365 [136 Cal.Rptr. 557]), the possibility the asserted error might not infect the trial (see *People v. Medina,* 6 Cal.3d 484, 491 [99 Cal.Rptr. 630, 492 P.2d 686]), and the possibility the asserted error might be corrected in a lower tribunal before or during trial (*Rescue Army v. Municipal Court,* 28 Cal.2d 460, 466 [171 P.2d 8]). A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ.

*(Rescue Army* v. *Municipal Court, supra,* 28 Cal.2d 460, 466; *Mitchell* v. *Superior Court,* 98 Cal.App.2d 304 [219 P.2d 861].)

In the case of most interim orders, "the parties must be relegated to a review of the order on appeal from the final judgment." (*Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854], quoting *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; *Rescue Army* v. *Municipal Court, supra,* 28 Cal.2d 460, 466; see *Babb* v. *Superior Court,* 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, 389-391, 394 (Mosk, J., dis.).) This reality reflects not only the adequacy of the appellate remedy in the usual case but also several important factors relating to judicial administration. "If reviewing courts made themselves routinely available to intervene by writ whenever a litigant claimed a mistake had been made in a law-and-motion department, trials would be delayed, litigants would be vexed with multiple proceedings, and judgment appeals would be kept waiting." (*Burrus* v. *Municipal Court,* 36 Cal.App.3d 233, 236 [111 Cal.Rptr. 539].)

 Notwithstanding these limitations on the availability of prerogative writs, the Supreme Court has repeatedly recognized the intervention of an appellate court may be required to consider instances of a grave nature or of significant legal impact,[3] or to review questions of first impression and general importance to the bench and bar where general guidelines can be laid down for future cases.[4] In such cases, the statutory requirement of inadequacy of appellate remedy may have been relaxed[5] in favor of immediate review of a question of statewide importance so that lower decisions in other cases will be uniform (see

[3] *Babb* v. *Superior Court, supra,* 3 Cal.3d 841, 851 (rulings on pleadings); see *Solberg* v. *Superior Court,* 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148] (hearing ordered on Supreme Court's own motion); *Morse* v. *Municipal Court,* 13 Cal.3d 149, 155 [118 Cal.Rptr. 14, 529 P.2d 46].

[4] *Daly* v. *Superior Court,* 19 Cal.3d 132, 140 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Valley Bank of Nevada* v. *Superior Court,* 15 Cal.3d 652, 655 [125 Cal.Rptr. 553, 542 P.2d 977]; *City of Fairfield* v. *Superior Court,* 14 Cal.3d 768, 777 [122 Cal.Rptr. 543, 537 P.2d 375]; *Rudnick* v. *Superior Court,* 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643]; *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 169; *Associated Brewers Distr. Co.* v. *Superior Court,* 65 Cal.2d 583, 585 [55 Cal.Rptr. 772, 422 P.2d 332]; *Oceanside Union School Dist.* v. *Superior Court, supra,* 58 Cal.2d 180, 185-186, footnote 4; see *Bailey* v. *Superior Court,* 19 Cal.3d 970 [140 Cal.Rptr. 669, 568 P.2d 394]; *City of San Jose* v. *Superior Court,* 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; compare *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800.

[5] See 5 Witkin, California Procedure (2d ed. 1971) Extraordinary Writs, sections 22, 125.

*Rescue Army* v. *Municipal Court, supra,* 28 Cal.2d 460, 467; *City of Los Angeles* v. *Superior Court,* 73 Cal.App.3d 509, 511 [142 Cal.Rptr. 292]). Indeed, where "the issues presented are of great public importance and must be resolved promptly" (*County of Sacramento* v. *Hickman,* 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; *Mooney* v. *Pickett,* 4 Cal.3d 669, 675 [94 Cal.Rptr. 279, 483 P.2d 1231]), the existence of an alternative appellate remedy will not preclude the original jurisdiction conferred by the California Constitution (Cal. Const., art. VI, § 10; *Clean Air Constituency* v. *California State Air Resources Bd.,* 11 Cal.3d 801, 808 [114 Cal.Rptr. 577, 523 P.2d 617]; see also *Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392, 402 [128 Cal.Rptr. 183, 546 P.2d 687]).

With these general principles in mind, we have concluded our intervention is warranted. We note, however, since "[a]vailability of review by traditional mandamus does not equate with entitlement to it" (*Malibu West Swimming Club* v. *Flournoy,* 60 Cal.App.3d 161, 164 [131 Cal.Rptr. 279]}, and since "it must be determined in each case, *not only on the basis of precedent but from an examination of all the facts,* whether there is an adequate remedy in the ordinary course of law" (*Rescue Army* v. *Municipal Court, supra,* 28 Cal.2d 460, 467; italics added), the intervention of the Supreme Court in *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381,[6] is not, by itself, dispositive.

Petitioner argues if mandamus is unavailable he "will be forced to individually bear the burdens of litigation, take the case to trial, successfully prove his case, and then finally appeal the class action issue." When this contention is considered in the context of other facts, and then only (see *Phelan* v. *Superior Court, supra,* 35 Cal.2d 363, 370) appeal from final judgment does not appear to be a practical remedy.

The trial court found, among other things: "The total actual damages which appear recoverable . . . are in excess of $300; . . . if 8,000,000 pounds of beef was furnished to the commissaries . . . and 20% of that

---

[6]In *Blue Chip Stamps* the majority explained: "Petitioners have no adequate remedy by appeal from final judgment. Delaying review until final judgment—while the trial court attempts to manage the unmanageable—would mean that the parties could not obtain appellate review until after they had paid the great costs which render the damage action inappropriate. Thus, appeal from a final judgment is not a practical remedy. [Citations.] Moreover, absence of another adequate remedy was determined by this court when we granted an alternative writ. (E.g., *City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423, 429 . . .)." (*Blue Chip Stamps, supra,* p. 387, fn. 4.)

amount upgraded, the retail price differential would be not less than one cent a pound, or $16,000, and not over ten cents a pound, or $160,000; . . . there is no reasonable likelihood that any single member of the proposed class could prove his claim to as much as ten dollars and it is reasonably probable that nearly all members of the proposed class would refrain from making claim for their individual claims because of the small amount provable."

The court further found: "Very substantial time and expense will be required to prosecute and defend against the claims made herein; legal fees and costs to both sides of this case would likely amount to at least $100,000 and might be twice this amount; at least four weeks court time will be required besides expense to the court in administering any claims themselves."

Thus, the expense of proceeding through trial is grossly disproportionate to the damages petitioner might expect to recover in his individual capacity; he alleges without contradiction "[d]ue to the extensive burden of time, excessive expense, and delay, it will be impossible for petitioner to take this case to trial in order to test respondent's ruling regarding class certification." Under the particular facts of this case, appeal from final judgment is not a practical remedy.

Furthermore, the facts are established without essential dispute. The issue is whether, under the facts found and conclusions drawn, the trial court was required, as a matter of law, to permit the suit to go forward as a class action. If so, the trial court was under a legal duty to certify the class, and it may be directed to perform that duty by writ of mandate. (See *City of Torrance* v. *Superior Court,* 16 Cal.3d 195, 201-202 [127 Cal.Rptr. 609, 545 P.2d 1313].) We are not reviewing a determination that the criteria of section 1781, subdivision (b), were not met, because the trial court drew affirmative conclusions as to each criterion in section 1781, subdivision (b).

Finally, our intervention is warranted because the issue raised is substantial[7] (see *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447,

[7]The Attorney General notes: "The decision of the court below would engraft onto the legislative requirements of section 1781 criteria other than those contained in the statute and, if allowed to stand, would greatly increase the burden already placed on prosecutorial agencies since the likelihood of private actions alleging use of the unfair methods of competition and unfair or deceptive acts or practices proscribed by section 1770 will decrease. Further, this decision removes from aggrieved consumers rights the Legislature has declared are theirs. For this reason, the Petition for Writ of Mandate presents a substantial issue in which Amici have an interest."

453; cf. *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800), and the case is one of first impression and general interest.

We emphasize, however, that our willingness to consider the denial of class certification before trial in this matter should not be construed as a *right* to review of such an order in every case. The general principles discussed above require an individual determination in each case, upon examination of both facts and issues, whether review by use of prerogative writs should be afforded (see *Rescue Army* v. *Municipal Court, supra,* 28 Cal.2d 460, 466-467).

■ Turning now to the merits, petitioner and the Attorney General urge, in essence, section 1781, subdivision (b), establishes exclusive criteria for class certification in suits brought pursuant to the Consumers Legal Remedies Act, and trial courts have no discretion to deny certification, based upon consideration of other factors, when the statutory criteria are satisfied. In defense of the trial court's order, real parties in interest argue, in essence, the Consumers Legal Remedies Act does not deprive trial courts of the discretion to determine when a class action is appropriate, and trial courts must consider in each case whether certification will result in substantial benefits to the litigants and the court. Real parties contend such discretion was properly exercised in denying certification in this case. Second, real parties in interest argue, if the Consumers Legal Remedies Act were intended to deprive the judiciary of its discretion to determine when a class action is appropriate, the act would improperly interfere with the inherent power of the judiciary to regulate its business and would violate the separation of powers' provision of the California Constitution. Finally, the real parties urge, even if the trial court were limited to consideration of the four factors enumerated in section 1781, subdivision (b) in determining whether this action should proceed as a class action, the court's findings support its decision that this action should not so proceed.

We first consider whether the criteria enumerated in section 1781, subdivision (b), are exclusive. ■ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672]; Civ. Code, § 4.) ■ In ascertaining the will of the Legislature, "[t]he court turns first to the words themselves for the answer. It may also properly

rely on extrinsic aids . . . . Primarily, however, the words, in arrangement that superimposes the purpose of the Legislature upon their dictionary meaning, stand in immobilized sentry, reminders that whether their arrangement was wisdom or folly, it was wittingly undertaken and not to be disregarded. [¶] . . . If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.] Certainly the court is not at liberty to seek hidden meanings not suggested by the statute or by the available extrinsic aids. [Citation.]" (*People* v. *Knowles,* 35 Cal.2d 175, 182-183 [217 P.2d 1].) (See also *In re Miller,* 31 Cal.2d 191, 198-199 [187 P.2d 722]; Code Civ. Proc., § 1858.)

Here, the words of the statute, "[t]he court *shall permit* the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist . . . ." (Civ. Code, § 1781, subd. (b); italics added), are reasonably clear. The word "shall" is ordinarily "used in laws, regulations, or directives to. express what is mandatory." (Webster's New Internat. Dict., Unabridged (3d ed. 1966) p. 2085, col. 3; see Black's Law Dict. (rev. 4th ed. 1968) p. 1541, col. 2; cf. *Rockwell* v. *Superior Court,* 18 Cal.3d 420, 442 [134 Cal.Rptr. 650, 556 P.2d 1101]; *Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 634 [12 Cal.Rptr. 671, 361 P.2d 247].) "May," on the other hand, is usually permissive. The Legislature is very aware of this distinction[8] and used "shall" to describe the court's obligation under section 1781, subdivision (b). This recognized meaning of "shall" supports petitioner's interpretation of the statute. If the Legislature intended, as real parties in interest suggest, that courts should consider *other* criteria in addition to those enumerated, and that the enumerated criteria are merely base standards which must be met before courts have any authority to certify a class, it should have used the word "may" to describe the court's duty.[9]

[8](See Bus. & Prof. Code, § 19; Code Civ. Proc., § 1732; Corp. Code, § 15; Ed. Code, § 75; Elec. Code, § 11; Evid. Code, § 11; Fin. Code, § 15; Fish & G. Code, § 79; Food & Agr. Code, § 47; Gov. Code, § 14; Harb. & Nav. Code, § 16; Health & Saf. Code, § 16; Ins. Code, § 16; Lab. Code, § 15; Mil. & Vet. Code, § 14; Pub. Resources Code, § 15; Pub. Util. Code, § 14; Rev. & Tax. Code, § 16; Sts. & Hy. Code, § 16; Unemp. Ins. Code, § 15; Wat. Code, § 15; Welf. & Inst., § 15.)
It is also noteworthy the Legislature used both "shall" and "may" in section 1871. It has been held where the Legislature has used both words in the same section it must be presumed to have attached to them their ordinary meanings (*National Automobile etc. Co.* v. *Garrison,* 76 Cal.App.2d 415, 417 [173 P.2d 67]; *Cannizzo* v. *Guarantee Ins. Co.,* 245 Cal.App.2d 70, 73 [53 Cal.Rptr. 657]).

[9]The difference in meaning is sometimes overlooked (see Reed, *Legislating For The Consumer: An Insider's Analysis Of The Consumers Legal Remedies Act* (1971) 2 Pacific L.J. 1, 14).

However, justice is not the slave of grammar, and "shall" has sometimes been judicially construed as directory or permissive (see *Governing Board* v. *Felt,* 55 Cal.App.3d 156, 161-163 [127 Cal.Rptr. 381]). The pertinent principles of construction in this regard were summarized in *People* v. *Municipal Court,* 145 Cal.App.2d 767 [303 P.2d 375]: " 'It is true that "shall," used in a statute, does not always import that its provisions are mandatory, *although in most cases it does. . . .*' [Citation.] The test is this: 'If to construe it as directory would render it ineffective and meaningless it should not receive that construction.' [Citations.] Thus, a statute was held to be mandatory where 'to construe this provision of the section as directory merely would be to defeat the very purpose of its enactment.' [Citation.] '. . . [I]t appears that if public policy is in favor of the imperative meaning, the words referred to will be held mandatory.' [Citation.] 'In construing a statute matters of substance are to be construed as mandatory.' [Citation.]" (*Id.* at p. 775.)

Real parties in interest note that numerous California decisions have held the determination whether an action should proceed as a class action is within the sound discretion of the trial court. (See, e.g., *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, 391; *Occidental Land, Inc.* v. *Superior Court,* 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.,* 37 Cal.App.3d 193, 199 [112 Cal.Rptr. 144].)

In apparent reliance upon such authority, the trial court denied certification (1) because substantial benefits would not accrue to the litigants, the class, the public, and the courts, and (2) because it was not probable that a high percentage of members of the class would come forward ultimately to prove separate claims to a portion of the total recovery.

Undoubtedly, these factors are germane to class certification in actions brought under Code of Civil Procedure section 382.[10] In *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, the Supreme Court held (1): "the representative plaintiff must show substantial benefit will result both to the litigants and to the court [citations]." (*Id.* at p. 385.) and (2) "A factor in determining feasibility of the group approach is the

[10]Code of Civil Procedure section 382 provides: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery. [Citation.] . . . [W]hen potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit. The damage action being unmanageable and without substantial benefit to class members, it must then be dismissed. [Citations.]" (*Id.* at p. 386.)

It is apparent from the Consumers Legal Remedies Act, itself, however, that such authorities were neither to be affected by the act nor to limit actions brought pursuant to the act. Section 1752 provides: "that its provisions are not exclusive, that the remedies provided therein shall be in addition to any other procedures or remedies provided for in any other law, and that nothing in the act shall limit any other statutory or any common law rights to bring class actions." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 818.) The section also provides: "Class actions by consumers brought under the specific provisions of Chapter 3 (commencing with Section 1770) of this title *shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780); . . .*" (Civ. Code, § 1752; italics added.) Since the Consumers Legal Remedies Act is clearly supplemental to remedies available under other statutory and case law (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 818), and since actions brought under the act are governed exclusively by its own provisions (Civ. Code, § 1752), the authorities relied upon by the real parties in interest, and applied by respondent, are not dispositive. Section 1752 clearly reinforces petitioner's position that the Legislature used the word "shall" in section 1781, subdivision (b), in its ordinary, mandatory sense.[11]

Contextual examination of section 1781, subdivision (b), reveals that "shall" must be given such mandatory meaning to promote the act's purposes and effectiveness. The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760; see also Hayes, Report Relative to Assem. Bill No. 292, 4 Assem. J. (1970) Reg. Sess.) pp. 8464, 8466.) Even on the most fundamental level, it is plain the construction offered by real parties in

---

[11]Apparently, an early draft of section 1781, subdivision (b), began "*Notwithstanding the provisions of Section 382 of the Code of Civil Procedure,* the court shall permit . . . ." (See Author's Amendment No. 13 to Assem. Bill No. 292, 2 Assem. J. (1970) Reg. Sess.) p. 2117.) The italicized language was deleted, presumably, because it was unnecessary in light of section 1752.

interest, which would permit trial courts to deny certification based upon nonenumerated criteria, would counteract the legislation's underlying purposes because it would make it more difficult for consumers to secure the protection intended by the act.

Moreover, the effectiveness of the act would be significantly diminished by a permissive construction of the word "shall" in section 1781. This is illustrated by consideration of how the act would be curtailed if the two criteria relied upon by the trial court in this matter were held to be appropriate grounds for denial of class certification.

The first factor, no substantial benefit to "the litigants, the class, the public and the courts," appears to add a requirement of "substantial benefit to the public" to the acknowledged requirement, in class actions brought under Code of Civil Procedure section 382, of "substantial benefit to the litigants [which presumably includes the class] and the courts." (See *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 458-460; *Collins* v. *Rocha,* 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 811.) The latter requirement is alternatively referred to as "community of interest" and turns on the existence and extent of common questions of law and fact. (See *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 460; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 811.) This common law requirement is substantially codified in section 1781, subdivision (b)(2). Thus, except for the subconclusion that substantial benefit would not accrue to the public, the trial court's second (see fn. 2) and fifth (see *ante* p. 127) conclusions of law appear inconsistent.

The factual referents for the court's subconclusion that the public would not substantially benefit are not apparent. It is clear, however, the Legislature has determined that class suits against persons who falsely represent the grade of goods in consumer transactions are in the public interest. (Civ. Code, §§ 1780, 1770, subd. (g), 1781.) The Legislature may have determined such class actions serve the public purposes of disgorging wrongfully obtained profits (see *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 808) and deterring the deceptive practice (*id.*). Or it may have made the public policy determination that class actions are a far more effective and efficient remedy for consumers than the intervention of a governmental body to protect consumer interests (*Vasquez* v.

*Superior Court, supra,* 4 Cal.3d 800, 816-817, fn. 14).[12] In any event, the policy determinations of the Legislature expressed in the act would be greatly undermined if trial courts were permitted to refuse certification based upon their own assessment of public benefit from such actions.

As to the second factor, "the probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery" (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, 386), several features of the Consumers Legal Remedies Act are noteworthy.

First, the "unfair methods of competition and unfair or deceptive acts or practices" made unlawful by section 1770 very often will have bilked individual consumers of only petty amounts.[13] If section 1781, subdivision (b), were construed to permit trial courts to bar class relief based upon the unlikelihood that individual class members would prove such small claims, the act would be self-nullifying.

Second, the act expressly authorizes the recovery of punitive damages (Civ. Code, § 1780, subd. (a)(3)), and for this reason it is very difficult to surmise what the range of individual claims might be. In the matter before us, for example, the trial court found, for the purposes of the motion, certain circumstances[14] which indicated punitive damages might

---

[12]In his amicus curiae brief the Attorney General notes that his office "receives many more complaints than its resources allow it to effectively deal with. That is also the experience of almost every state and local regulatory agency. The Attorney General's Office and the Department of Consumer Affairs and its boards and bureaus receive more than 100,000 consumer complaints a year.

". . . [T]he actual number of cases which can and do get filed by law enforcement agencies to vindicate the rights of aggrieved consumers is infinitesimal in comparison to the number of legitimate consumer complaints received. Because law enforcement agencies cannot undertake to vindicate the rights of individually victimized consumers, it is often only through the use of consumer statutes such as the CLRA, that consumers can obtain vindication for themselves." (See gen. Reed, *op. cit. supra,* p. 12.)

[13]For illustrations, see Hayes, Report Relative to Assembly Bill No. 292, 4 Assembly Journal (1970 Reg. Sess.) pages 8464, 8465-8466.

[14]The court found: "The defendant packing companies paid, and government inspectors received, bribes to upgrade meat over a long period of time and that this practice was widespread and included many suppliers not parties herein; deterrence of this practice, particularly as it preys upon purchasers of food products, is a desirable end. Some deterrence has already occurred through revelation and publicity concerning these practices, USDA proceedings to revoke grading privileges, Defense Department sanctions against the packing companies and criminal proceedings."

be awarded at trial. Yet potential punitive damages were apparently ignored in determining the probable size of individual claims. The distribution of punitive damages to the class would affect the likelihood that class members would step forward to prove individual claims. The Legislature might well have determined certification of consumer class actions should not turn on such pretrial conjecture.

Third, the act contemplates class awards as low as $300. (Civ. Code, § 1780, subd. (a)(1).) This implies some consumer class actions might go forward even though the individual claims of class members would be minimal.

Finally, the act apparently contemplates class actions in which no damages are sought. Section 1781, subdivision (a), authorizes consumer class actions "to recover damages *or* obtain other relief as provided for in Section 1780" [an injunctive order (Civ. Code, § 1780, subd. (a)(2)) or "any other relief which the court deems proper" (Civ. Code, § 1780, subd. (a)(4))]. (Italics added.) If damages are not even a necessary objective of a consumer class suit, it is very doubtful the Legislature intended the certification could be denied on the ground individual monetary recovery would be slight.

Based upon the common meaning of "shall" as it is used in statutes, the clear directive of section 1752 that actions brought pursuant to the act are to be governed exclusively by its own provisions, and the frustration of the act's purposes and effectiveness which would result from a contrary interpretation, we conclude the mandatory interpretation advanced by petitioner and the Attorney General is reasonable and proper.

■ Real parties in interest argue if the Consumers Legal Remedies Act were intended to deprive the judiciary of its discretion to determine when a class action is appropriate, the act would violate the separation of powers' provision of the California Constitution[15] by improperly interfering with the inherent power of the judiciary to regulate its business. This contention is unpersuasive.

The Attorney General correctly observes section 1781 does not deprive trial courts of all discretion to determine when certification is appro-

---

[15]Article III, section 3, provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

priate. Trial courts have considerable latitude under the four criteria of subdivision (b) in deciding whether a class action is proper. The subdivision merely circumscribes the factors which trial courts properly may consider.

Real parties in interest fail to demonstrate the constitutional infirmity of such a limitation. They broadly claim: "The right of the judiciary to regulate the size and complexity of litigation is necessary to the preservation and orderly maintenance of the judicial system. Any legislative attempt to limit those rights by engulfing the courts with massive class actions and thrusting gigantic burdens on the court's resources beyond its capacity to manage or effectively control would [be unconstitutional]." Not satisfied, they summon images of the class action as "engine of destruction" and "Frankenstein monster" to haunt us.

However, "[t]he Legislature has broad power to prescribe the procedure under which courts exercise their constitutional or statutory jurisdiction. [Citations.]

"Constitutional recognition of this power appears in Article VI, § 6, stating that the Judicial Council may adopt rules for court administration and practice and procedure 'not inconsistent with statute.' " (1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 114, p. 383.)

Code of Civil Procedure section 128 recognizes certain matters are within judicial power.[16] None of these inherent powers are demonstrably impaired by section 1781, subdivision (b). The cases relied upon by real

---

[16]Code of Civil Procedure section 128 provides in part:

"Every court shall have power:

"1. To preserve and enforce order in its immediate presence;

"2. To enforce order in the proceedings before it, or before a person or persons empowered to conduct a judicial investigation under its authority;

"3. To provide for the orderly conduct of proceedings before it, or its officers;

"4. To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein;

"5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto;

"6. To compel the attendance of persons to testify in an action or proceeding pending therein, in the cases and manner provided in this code;

"7. To administer oaths in an action or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers and duties;

"8. To amend and control its process and orders so as to make them conformable to law and justice."

parties in interest involved the essential operations of courts[17] or direct legislative interference with inherent judicial functions.[18]

 Finding no constitutional defect, we hold Civil Code section 1781, subdivision (b), establishes exclusive criteria for class certification in suits brought pursuant to the Consumers Legal Remedies Act. If the statutory criteria are satisfied, a trial court is under a duty to certify the class and is vested with no discretion to deny certification based upon *other* considerations.

In this matter the trial court concluded all of the statutory criteria were satisfied. It was therefore under a duty to certify the class. The denial of class certification based upon consideration of other factors erroneously denied petitioner of a clear and beneficial right to certification.

We have considered the final argument of real parties in interest, that the findings of the trial court support its action despite its specific conclusions on the criteria of section 1781, subdivision (b), and find it to be without merit.

Let a peremptory writ of mandate issue compelling the San Diego County Superior Court to (1) vacate its order denying petitioner's motion for class certification and (2) grant the motion.

Cologne, J., and Staniforth, J., concurred.

A petition for a rehearing was denied December 2, 1977, and the petition of the real parties in interest for a hearing by the Supreme Court was denied February 10, 1978. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.

---

[17]See *Millholen* v. *Riley,* 211 Cal. 29 [293 P. 69] [upholding the power of a Court of Appeal to appoint a law secretary and fix her salary]; *Vidal* v. *Backs,* 218 Cal. 99 [21 P.2d 952, 86 A.L.R. 1134] [involving when courts are open for business]; *Lorraine* v. *McComb,* 220 Cal. 753 [32 P.2d 960] [upholding judicial power to control the "orderly and effective dispatch of legal business" by denying a continuance despite a statutory provision allowing it].

[18]See *Esteybar* v. *Municipal Court,* 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993].