[Nos. D004658, D005041, D004186. Fourth Dist., Div. One. Feb. 8, 1988.]

COMMUNITY DEVELOPMENT COMMISSION OF THE CITY OF OCEANSIDE, Plaintiff and Respondent, v. REX L. SHUFFLER et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section IV.

## COUNSEL

Asaro & Keagy, Roscoe D. Keagy, Richard R. Freeland, Arnold Neves, Jr., Kenneth Golden, Goebel, Shensa & Beale, Louis E. Goebel, Meagan J. Beale, Schall, Boudreau & Gore, Richard R. Gore and Theresa R. Castagneto for Defendants and Appellants.

Daley & Heft, Dennis W. Daley and John S. Gleason for Plaintiff and Respondent.

## OPINION

**TODD, J.**—Condemnees, Rex. L. Shuffler and Betty L. Shuffler (Shufflers), appeal orders denying their motion to set aside an abandonment of a condemnation proceeding by the Community Development Commission of the City of Oceanside (Commission) (D005041, notice of appeal filed Aug. 1, 1986) and granting Commission's motion for a new trial subject to remittitur (D004658, notice of appeal filed June 10, 1986).

Pacific Ltd. and Pacific Center Tower One (collectively, PCTO), defendants whose defaults were entered in the condemnation proceeding, appeal orders denying motions to set aside default, for leave to file a cross-complaint and reconsideration (D004186, notice of appeal filed Feb. 3, 1986).

Federal Deposit Insurance Corporation (FDIC), successor in interest to Newport Harbour National Bank (NHNB), appeals the judgment in condemnation to the extent it establishes Shufflers as owners of the property subject to condemnation, determines FDIC had no right, title or interest in the condemnation proceeds awarded and orders $1,219,916 paid to Shufflers (D004186, notice of appeal filed Mar. 4, 1986).

We give effect to the abandonment of the condemnation proceeding. Thus, except with respect to PCTO's expressed intent to seek litigation expenses, we do not address issues pertaining to the condemnation judgment and the motion for new trial made moot by the abandonment.

## FACTS

Seven parcels constituting most of a city block in downtown Oceanside and held of record in Shufflers' name are the subject of the condemnation and this appeal. For convenience only, we refer to these parcels as the Shufflers' property. In 1981 Shufflers sold the property to Office Buildings, Inc. (OBI) for development purposes under the Commission's downtown Oceanside redevelopment plan. The purchase price was $1.3 million and on May 18, 1981, OBI executed a promissory note secured by an all-inclusive trust deed (AITD) with Shufflers as beneficiaries for the $1.25 million balance remaining after close of escrow.[2]

PCTO, named as a defendant in the condemnation proceeding, claims an interest as a result of defects alleged to be present in Shufflers' private foreclosure on the property after OBI defaulted on the note secured by the AITD. PCTO is a successor in interest to OBI. PCTO was served in the condemnation proceeding by publication of summons that did not describe the property sought to be taken. (See Code Civ. Proc.,[3] §§ 1250.120, subd. (b), 1250.125, subd. (b).) PCTO defaulted in the condemnation proceeding and its motions for relief from default were denied.

FDIC, which holds the assets of NHNB, also claims an interest under an unspecified theory connected with the AITD note it once held as collateral for a loan. In a decision now on appeal to the Ninth Circuit Court of Appeals, the United States District Court has held, in part, that on March 23, 1982, when OBI repaid a $200,000 NHNB loan made at the time Shufflers sold the property to OBI, the Shufflers became entitled to reassignment of the AITD note and the AITD, and FDIC has no interest, by reason of the AITD note or the AITD, in the funds on deposit in the condemnation proceeding. FDIC participated actively in the federal proceeding only, and claims the scope of the issues litigated in both the state and federal courts is exceeded in the trial court's judgment establishing the Shufflers as the owners entitled to the condemnation proceeds to the exclusion of FDIC.[4]

---

[2] For the sake of brevity in light of the conclusion ultimately reached on this appeal, we do not present a detailed statement of the facts of the various loans, security arrangements, repayments, defaults on obligations and efforts at recovery of title or payment. Rather, we make only a general presentation of facts to show the parties' basic interest in this litigation.

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[4] In its opening brief, FDIC states: "If the Shufflers' appeal [challenging the abandonment] is not successful, there will be no more condemnation proceeding. In that event, the FDIC could not ask this Court to remand the case for a new trial on the findings challenged by this appeal. However, these findings would remain as part of a Judgment in Condemnation which has not yet been fairly reviewed on appeal. FDIC believes that in the event of a successful

According to the declaration of Rex L. Shuffler in support of his motion to set aside the abandonment, the Shufflers began buying the parcels in question in 1975 with a goal of developing the property for commercial use. The Shufflers' purchases were completed in 1978. The Commission published a directive concerning its intentions regarding properties in its redevelopment area, including Shufflers' parcels. The directive provided several options, including joinder with the Commission in a mutual development effort, sale of the property to a developer or eminent domain.

After the Shufflers negotiated for the sale of their property to OBI in 1981, OBI entered a Development and Disposition Agreement (DDA) with the Commission. OBI took possession in May 1981 and began demolishing the buildings. Shufflers received no income from the property after July 1982. In October 1982, the DDA between the Commission and OBI was terminated after default by OBI.

As of December 22, 1982, the property was not income producing and substantially all the buildings were demolished. According to the Commission, demolition of the buildings was required by nuisance abatement and the Commission completed the demolition at a cost of $30,000. The Commission already owned the adjacent block and portions of the block containing the Shufflers' parcels.

The Commission filed its complaint in eminent domain on December 22, 1982, and caused a notice of lis pendens to be recorded. On the same date the Commission obtained an order for possession, including authority to remove all persons, obstacles, improvements or structures on the property as of April 1, 1983. Pursuant to section 1255.410, the Commission deposited $604,400, $590,500 of which was for the real property, as the probable compensation for the taking. (See also § 1255.010.)

On March 4, 1983, Shufflers foreclosed on the property as against PCTO for a full credit bid of $1,086,474.17. Shufflers applied for an order allowing them to withdraw their share of the deposit. A portion of the deposit was withdrawn to satisfy underlying security interests against the property.

On March 15, 1983, at the request of FDIC, the entire matter was removed to the United States District Court. At issue were the respective

abandonment, the Judgment in Condemnation should be reversed so as not to operate unfairly as *res judicata* in further proceedings between the FDIC and the Shufflers.

"This Court may find that simply by virtue of the abandonment, the Judgment in Condemnation challenged by this appeal must be reversed as a matter of law. Inasmuch as the Shufflers' appeal of that abandonment has not yet been exhausted, however, FDIC respectfully submits that in the alternative this Court should review the substantive basis for this appeal, and find that the trial court, in entering the findings challenged herein, erred as a matter of law so that its Judgment in Condemnation should be reversed."

claims of the Shufflers and FDIC to the funds on deposit in the condemnation proceeding. Shufflers and FDIC were the only claimants to these funds. On October 31, 1984, the valuation issues were severed from the federal action involving the Shufflers and FDIC and transferred back to the state court.

On February 22, 1985, approximately 22 months after the case was removed, the federal court filed a partial judgment ordering, in part, that FDIC is not entitled to any of the funds on deposit in the state action, nor to any portion of the award which may be made in the final condemnation judgment. The federal court also transferred the action back to the state court for all further proceedings. This partial judgment is the subject of the appeal in the Ninth Circuit Court of Appeals.[5] On February 27, 1985, the trial court authorized the Shufflers to withdraw the balance of the $590,500 deposit for the real property. The Shufflers withdrew the balance of $403,088.69, thus waiving all claims and defenses except a claim for greater compensation. (§ 1255.260.)

On July 19, 1985, pursuant to section 1250.410, Shufflers and Commission exchanged their final demand and final offer. Shufflers demanded $1.3 million, less sums previously deposited and withdrawn, plus accrued interest. Commission offered $800,000.

Jury trial to determine the fair market value of the property began August 26, 1985. On September 13, 1985, the jury found the fair market value was $1.5 million. On November 1, 1985, the court found the amount of prejudgment interest due from April 1, 1983, through November 1, 1985, was $310,416. On January 6, 1986, a judgment in condemnation in favor of the Shufflers was entered in the sum of $1,500,000, less $590,500 previously withdrawn, plus $310,416 interest, for a total of $1,219,916, plus daily interest to date of judgment.

On January 13, 1986, Shufflers gave notice of their intent to move for litigation expenses on the ground that Commission's final offer was unreasonable. (§ 1250.410, subd. (b).) On March 28, 1986, the motion was granted and Shufflers were awarded litigation expenses totaling $263,000.

On January 15, 1986, Commission filed and served its notice of intent to move for a new trial. On March 4, 1986, the new trial motion was granted subject to Shufflers' acceptance of a remittitur of the damages award reducing the judgment to $1.2 million as the value of the property. Shufflers

---

[5] At oral argument on November 12, 1987, FDIC informed this court the Ninth Circuit Court of Appeals has ordered the United States District Court judgment vacated if the abandonment is upheld.

accepted the remittitur on March 28, 1986. On April 24, 1986, the trial court filed an order amending the judgment on acceptance of the remittitur and denial of the motion for new trial.[6]

On April 16, 1986, Commission filed its notice of abandonment of the condemnation proceeding. (§ 1268.510, subd. (a).) There followed Shufflers' motion to set aside the abandonment which was heard and denied by entry in the minutes of the court on June 6, 1986. A formal written order denying the motion to set aside the abandonment was filed August 5, 1986.

On August 12, 1986, the trial court ordered entry of an interlocutory judgment of dismissal, reserving the matters of the transfer of the property back to the Shufflers and damages caused by the condemnation proceeding until after the appeal is no longer pending. Shufflers petitioned for a writ of mandate to compel the trial court to exercise jurisdiction over these posta-bandonment procedures. (D005312.) This court denied the writ on October 29, 1986, stating in part: "The statutory scheme and the assignment of discrete judicial responsibility between the trial court and the appellate court contemplates the aggrieved party be given a choice. Where the property owner wishes to challenge the City's abandonment of the condemnation proceedings, he should appeal from the judgment of dismissal. (Code Civ. Proc., § 1268.510.) Where the property owner wishes to accede in the abandonment of the condemnation proceedings, he should seek an order for possession and damages. (Code Civ. Proc., § 1268.620.) He cannot do both as these petitioners are trying to do."

This court's order denying Shufflers' petition for mandate also said that we were inclined to treat Shufflers' appeal from the order denying their motion to set aside the abandonment as a premature notice of appeal from the judgment of dismissal.

DISCUSSION

I

■ Shufflers contend the notice of abandonment and order denying their motion to set aside the abandonment are void for lack of subject

---

[6]On May 28, 1986, the Commission filed a notice of appeal. This was more than 30 days but less than 60 days after the April 24, 1986, modification of the judgment. On June 10, 1986, Shufflers filed their cross-appeal (D004658). On July 3, 1986, Commission abandoned its appeal and then moved to dismiss Shufflers' appeal on the ground that since Commission's appeal was untimely Shufflers' cross-appeal also was untimely. This court denied the motion to dismiss Shufflers' appeal, holding the "April 24, 1986, order is appealable as the final judgment."

matter jurisdiction. Shufflers' theory is that since two appeals were pending the trial court no longer had jurisdiction to consider the abandonment. They rely on the FDIC notice of appeal filed March 4, 1986, and on the Commission's notice of appeal filed May 28, 1986, as depriving the trial court of jurisdiction over matters embraced in or affected by the judgment and order from which the appeals were taken. (§ 916, subd. (a).)[7] Shufflers recount that the notice of abandonment was filed April 16, 1986, their own motion to set aside the abandonment was filed May 9, 1986, and the Commission abandoned its appeal July 3, 1986. The order denying Shufflers' motion to set aside the abandonment was made June 6, 1986, four days before the Shufflers perfected their cross-appeal.

While the general rules Shufflers argue are applicable to most appeals, a special statute takes this case out of the application of those general rules. Section 1268.510, subdivision (a), specifically provides: *"At any time* after the filing of the complaint *and before the expiration of 30 days after final judgment, the plaintiff may* wholly or partially *abandon the proceeding by* serving on the defendant and filing in court a written *notice of such abandonment."* (Italics added.)

"Judgment" means the judgment determining the right to take the property by eminent domain and fixing the amount of compensation to be paid by the plaintiff. (§ 1235.130.) "Final judgment" means a judgment with respect to which all possibility of direct attack by way of appeal, motion for a new trial, or motion under section 663 to vacate the judgment has been exhausted. (§ 1235.120.)

These unambiguous statutes lead to the conclusion that since Commission's notice of abandonment was served and filed at a time "before the expiration of 30 days after final judgment," it was specifically authorized by section 1268.510. In this connection, the appealable judgment has already been determined to be the April 24, 1986, order amending the January 3, 1986, judgment on acceptance of the remittitur and denial of the motion for a new trial. Thus it is clear the April 16, 1986, notice of abandonment was timely. The notice was served and filed even before entry of the judgment appealable by Shuffler and Commission. "[A]ll possibility of direct attack" (§ 1235.120) was not exhausted when the notice of abandonment was served and filed.

---

[7] "(a) Except as provided in Sections 917.1 through 917.9 and in Section 117.7, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

Since the notice of abandonment was specifically authorized by section 1268.510, so also was the court similarly authorized to entertain and rule on the motion to set aside the abandonment under subdivisions (b) and (c) of the section, which read: "(b) The court may, upon motion made within 30 days after the filing of such notice, set the abandonment aside if it determines that the position of the moving party has been substantially changed to his detriment in justifiable reliance upon the proceeding and such party cannot be restored to substantially the same position as if the proceeding had not been commenced.

"(c) Upon denial of a motion to set aside such abandonment or, if no such motion is filed, upon the expiration of the time for filing such a motion, the court shall, on motion of any party, enter judgment wholly or partially dismissing the proceeding."

This specific authority conferred on the court to act in connection with an abandonment timely filed and served before "final judgment" in the condemnation proceeding precludes application of general rules pertaining to the shifting of jurisdiction from the trial court to the appellate court upon the perfection of an appeal. The trial court had subject matter jurisdiction with respect to the notice of abandonment and the motion to set it aside.

## II

Shufflers contend that assuming the trial court had jurisdiction to allow the abandonment of the condemnation proceeding, the denial of Shufflers' motion to set aside the abandonment was an abuse of discretion. First, Shufflers argue the order is defective because the court made no findings, and in this connection rely on language of section 1268.510, subdivision (b), permitting the court to set aside the abandonment "*if it determines* that the position of the moving party has been substantially changed to his detriment in justifiable reliance upon the proceeding and such party cannot be restored to substantially the same position as if the proceeding had not been commenced." (Italics added.) Second, Shufflers assert an abuse of discretion in denying their motion is shown by the passage of four years without a suggestion by Commission that it would elect to abandon if required to pay more than it anticipated, combined with evidence of a lack of a good faith investigation by Commission of the probable amount of just compensation to be awarded and the Shufflers' change of position without ability to be restored to substantially the same position they had before the condemnation proceeding was commenced.

■ On the matter of findings, the fact the statute requires certain determinations as preconditions to an order setting aside an abandonment does not necessarily lead to the conclusion the court must make findings on those preconditions. The statute does not use the word "findings," a term well known to the Legislature and, since 1981, disfavored by it. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 394, p. 401, Judgment, § 48, pp. 485-486.) In light of the statutory changes with respect to findings made after decisions in cases such as *Los Angeles Unified Sch. Dist.* v. *C.F. Bolster Co.* (1978) 81 Cal.App.3d 906, 918 [146 Cal.Rptr. 789], holding under former section 632 that findings were required on a motion for litigation expenses under the predecessor to section 1250.410, we cannot rely on such authority. Instead, considering the absence of statutory language specifically requiring findings, we conclude that findings are not required.

With respect to the factual questions of Shufflers' substantial, detrimental change of position, justifiable reliance and inability to be restored to the same position they were in before the condemnation proceeding began, the trial court considered rather extensive moving papers and argument on Shufflers' behalf. Considering the broad, unconditional and long-term power granted the condemnor to abandon at any time before the expiration of 30 days after final judgment (§ 1268.510, subd. (a)), as well as the factual data presented to the trial court, we find no abuse of discretion in the trial court's ruling. In this connection, *City of Torrance* v. *Superior Court* (1976) 16 Cal.3d 195, 203-204, footnote 5 [127 Cal.Rptr. 609, 545 P.2d 1313], observed the Law Revision Commission has said that " . . . '[i]n California, unless the condemnor has done some additional act which would estop him, he can abandon with near impunity.' " (Italics deleted.)

■ Cases disallowing abandonment contain an element of detrimental reliance not present here. That element is the condemnee's purchase or construction of replacement property. (See *City of Torrance* v. *Superior Court, supra,* 16 Cal.3d 195, 207; *McGee* v. *City of Los Angeles* (1936) 6 Cal.2d 390 [57 P.2d 925]; *Times-Mirror Co.* v. *Superior Court* (1935) 3 Cal.2d 309 [44 P.2d 547].) The *City of Torrance* case also involved repeated and emphatic assurances from the condemnor that it intended to prosecute the eminent domain proceeding to final judgment. (16 Cal.3d at p. 207.) No such assurances are present in this case. From these distinctions it follows that these cases do not furnish authority for concluding the trial court abused its discretion in denying the motion to set aside the abandonment.

Shufflers' reliance on the Arizona case of *Whitestone* v. *Town of South Tucson* (1966) 2 Ariz.App. 494 [410 P.2d 116], is misplaced. That case

involved common law entitlement to costs, witness fees and attorney's fees after a postverdict abandonment of the condemnation proceeding. It did not involve the ability of the condemnor to abandon the proceeding. No statute such as section 1268.610, entitling the defendant to litigation expenses upon dismissal, was involved in *Whitestone*. The court held under common law principles that upon a showing the condemnor did not act in good faith in commencing and abandoning the proceeding litigation expenses should be awarded. (410 P.2d at p. 118.) Bad faith could include a showing of a failure to make reasonable investigation of the value of the property with intent to ascertain value from the trier of fact alone. (*Ibid.*) There is no showing of such circumstances here.

■ Many of the facts the Shufflers cite in their argument concerning the denial of their motion to set aside the abandonment are more properly to be considered in the category of damages to which they will be entitled as a result of the abandonment and dismissal.[8] Section 1268.620, subdivision (b), entitles Shufflers to "all damages proximately caused by the proceeding and its dismissal as to that property."[9] Under this broadly worded provision, Shufflers will be permitted to prove up any and all loss of use and loss of opportunity damages proximately caused by the proceeding and the dismissal. We note the Law Revision Commission Comment to section 1268.620 contains the statement that the section "is not intended to limit any remedies the defendant may have on an inverse condemnation theory for damage to the property during litigation." (19A West's Ann. Cal. Code Civ. Proc. (1982 ed.) p. 181; Deering's Ann. Code Civ. Proc. (1981 ed.) p. 408; see *Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790, 800-801 [214 Cal.Rptr. 904, 700 P.2d 794].)

As a result of the dismissal, Shufflers will also be entitled to recover their litigation expenses. (§ 1268.610.)[10] Thus, there is no substantial merit to

---

[8] For example, arguing they cannot be restored to substantially the same position they occupied before the condemnation was commenced, Shufflers present factual contentions that (1) the current land use regulations of Oceanside impose additional burdens on them if they go forward with their original plans to develop the property, (2) their development of the property will be further impeded due to the completed acquisition of adjoining and surrounding property by Commission, and (3) future development is also questionable because of the adversarial relationship that has resulted from these proceedings.

[9] Section 1268.620 provides: "If, after the defendant moves from property in compliance with an order or agreement for possession or in reasonable contemplation of its taking by the plaintiff, the proceeding is dismissed with regard to that property for any reason or there is a final judgment that the plaintiff cannot acquire that property, the court shall: [¶] (a) Order the plaintiff to deliver possession of the property to the persons entitled to it; and [¶] (b) Make such provision as shall be just for the payment of all damages proximately caused by the proceeding and its dismissal as to that property."

[10] Section 1268.610 provides, in part: "(a) Subject to subdivision (b), the court shall award the defendant his litigation expenses whenever: [¶] (1) The proceeding is wholly or partly dismissed for any reason; . . ."

Shufflers' argument concerning their fear that under section 1268.160,[11] due to their withdrawal of the deposit, they will be required to repay the Commission after having depleted substantially all their assets in defending their interests in this litigation. Moreover, the argument is speculative, for it may well be that the judgment to which the Shufflers are entitled upon proper proof of damages and litigation expenses will exceed the amount they have withdrawn. With respect to litigation expenses alone, we note the considerable litigation that has occurred since March 28, 1986, when the court determined the Shufflers were entitled to $263,000 in litigation expenses to that date. This figure alone represents a substantial percentage of the $590,500 withdrawn from the deposit. Shufflers are entitled to recover their litigation expenses beyond the amount covered by the order of March 28, 1986. Contrary to Shufflers' reliance on *City of Torrance* v. *Superior Court, supra,* 16 Cal.3d 195, 208, which we find inapplicable here, we believe that upon a proper showing Shufflers can be adequately compensated for all damages proximately caused by the condemnation proceeding and its dismissal.

In this connection, at oral argument counsel for the Commission stipulated that, so long as there is no order to deliver possession to the Shufflers before a net money judgment is entered in favor of the Commission, the matter of the Commission's entitlement under section 1268.160 to payment of any amount of the withdrawn deposit shall be tried in the same proceeding litigating the matter of the Shufflers' entitlement under sections 1268.610 and 1268.620 to litigation expenses and damages, and the Commission will not seek or claim payment of any net judgment found due the Commission in that proceeding until the Shufflers have exhausted their claims for litigation expenses and damages. Future proceedings in accordance with this stipulation will substantially equalize the respective positions of these parties pending final determination of damages and litigation expenses.

We conclude there was no abuse of discretion in the trial court's denial of Shufflers' motion to set aside the abandonment.

---

[11] Section 1268.160 provides: "(a) Any amount withdrawn by a party pursuant to this article in excess of the amount to which he is entitled as finally determined in the eminent domain proceeding shall be paid to the parties entitled thereto. The court shall enter judgment accordingly. [¶] (b) The judgment so entered shall not include interest except that any amount that is to be paid to a defendant shall include legal interest from the date of its withdrawal by another defendant. [¶] (c) If the judgment so entered is not paid within 30 days after its entry, the court may, on motion, enter judgment against the sureties, if any, for the amount of such judgment. [¶] (d) The court may, in its discretion and with such security as it deems appropriate, grant a party obligated to pay under this section a stay of execution for any amount to be paid to a plaintiff. Such stay of execution shall not exceed one year following entry of judgment under this section."

## III

In light of the conclusions reached in parts I and II, above, and considering that the trial court has ordered a dismissal of the proceeding, it is unnecessary to address the remaining issues raised by Shufflers and FDIC in this consolidated appeal. There is no longer a judgment in condemnation affecting these issues. (See *Cook* v. *Stewart McKee & Co.* (1945) 68 Cal.App.2d 758, 761-762 [157 P.2d 868].) Questions about the propriety of the grant of the new trial motion (Shufflers' remaining issue) and the proper scope of the issues litigated in the condemnation proceeding vis-á-vis the federal proceeding (FDIC issue) are made moot by the dismissal of the condemnation proceeding. Accordingly, we express no view on those issues.

Were it not for the fact PCTO has expressed a desire to seek litigation expenses, its appeal would be moot for the same reasons. However, PCTO points out that it is no longer in the case by reason of its default having been entered. Thus, it cannot seek litigation expenses to which it might otherwise be entitled as a named defendant in this dismissed condemnation proceeding. (§ 1268.610, subd. (a).) It follows, the propriety of the default entered against PCTO is not an issue necessarily mooted by the dismissal. Thus, we discuss that issue in the next part, upholding the propriety of the default and ultimately concluding PCTO's appeal is moot.

## IV*

. . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order denying the motion to set aside the abandonment, the notice of appeal from which we construe as an appeal from the judgment of dismissal, is affirmed as is the judgment of dismissal. The moot appeals of FDIC from the judgment in condemnation and of PCTO from the orders denying motions to set aside default, for leave to file a cross-complaint and for reconsideration are dismissed. The parties shall bear their own costs on

---

*See footnote 1, *ante*, page 450.

appeal without prejudice to the right of Shufflers to obtain reimbursement for those costs after remand as part of Shufflers' litigation expenses.

Butler, Acting P. J., and Thaxton, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied April 27, 1988.

---

* Assigned by the Chairperson of the Judicial Council.