[No. B129628. Second Dist., Div. Four. June 20, 2001.]

LOS ANGELES UNIFIED SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Respondent, v.
WILSHIRE CENTER MARKETPLACE, Defendant and Appellant.

1414

COUNSEL

Greenberg Glusker Fields Claman & Machtinger, Harvey R. Friedman and Garrett L. Hanken for Defendant and Appellant.

Paul, Hastings, Janofsky & Walker, David M. Walsh, George W. Abele and Kelley L. Sbarbaro for Plaintiff and Respondent.

OPINION

**VOGEL (C. S.), P. J.**—

### INTRODUCTION

This is an appeal by Wilshire Center Marketplace (WCM) from an order denying its motion to quash and recall a writ of execution on a judgment issued to the Los Angeles Unified School District of Los Angeles County (LAUSD). The primary issues presented are (1) whether the judgment became final before WCM was awarded its appellate litigation expenses; (2) whether the judgment earns interest at the legal rate from the date of entry; and (3) whether LAUSD is estopped to enforce the judgment based on WCM's pending inverse condemnation action.

### FACTS

This is the second appeal arising from the eminent domain proceeding initiated by LAUSD to acquire a portion of the Ambassador Hotel property owned by WCM. In our previous review of this matter, we affirmed the trial court's order validating the LAUSD's abandonment of the condemnation action. (*Los Angeles Unified School Dist. v. Trump Wilshire Associates* (1996) 42 Cal.App.4th 1682 [50 Cal.Rptr.2d 229].) The present appeal is more narrowly focused and the following factual summary suffices for this appeal.

On July 16, 1990, LAUSD filed an eminent domain lawsuit in the Los Angeles Superior Court to condemn 17 of the 23.48 acres of a parcel on which the Ambassador Hotel is located. At that time, WCM's predecessor in interest owned the property.[1]

On August 2, 1990, pursuant to Code of Civil Procedure section 1255.010, LAUSD deposited $47,919,000 with the trial court as the probable amount

---

[1] WCM was formerly known as Trump Wilshire Associates, a partnership from which the Trump organization has withdrawn, resulting in the name change of the title owner.

of compensation to be awarded in the eminent domain proceedings.[2] In January 1991, WCM withdrew the entire deposit to pay the purchase money loan secured by the property.

On November 10, 1993, pursuant to section 1268.510, LAUSD filed a notice of abandonment of the eminent domain proceedings. WCM moved to set aside the abandonment and its motion was denied. On February 17, 1994, judgment was entered in favor of LAUSD for the full amount of the deposit, $47,919,000. The judgment provided WCM would be allowed its "litigation expenses in accordance with Code of Civil Procedure Section 1268.610(a)(2), and damages in accordance with . . . Section 1268.620, should the Court deem such damages to be available here, in the sum of $ ____."

On December 28, 1994, WCM was allowed litigation expenses of $3,034,582. That sum was deducted from the full amount of the principal amount of the judgment, leaving a total net principal due of $44,884,418. WCM appealed from the denial of its motion to set aside the abandonment.

On February 29, 1996, this court affirmed the February 17, 1994 judgment. Pursuant to section 1268.720, this court awarded WCM its costs on appeal. On May 15, 1996, the California Supreme Court denied WCM's petition for review. On May 27, 1997, the award of $122,165 to WCM for its costs on appeal became final.

LAUSD obtained a writ of execution to enforce the judgment. On August 18, 1998, it commenced enforcement proceedings. On September 28, 1998, WCM filed a motion to quash and to recall the writ of execution and to stay enforcement proceedings. On December 21, 1998, the trial court denied the motion to quash. On February 22, 1999, WCM filed this appeal.[3]

ISSUES

WCM contends that the writ of execution should have been quashed and recalled on the following grounds:

(1) The judgment is not final and interest could not accrue before WCM's award of costs on appeal became final on May 27, 1997;

---

[2]All statutory references are to the Code of Civil Procedure.

[3]Between September 28, 1998, and March 21, 2000, WCM engaged in a flurry of postjudgment proceedings to stave off the enforcement of LAUSD's judgment. The last hurrah was WCM's motion to stay enforcement of the judgment and an application for waiver of an appeal bond. The trial court denied relief, except a stay conditioned on WCM's filing a petition for supersedeas in this court not later than April 20, 2000. WCM filed a petition for supersedeas in this court on April 20, 2000. The petition was denied on May 24, 2000.

(2) Recovery of interest on the judgment for repayment of the condemnation deposit is contrary to section 1255.280, subdivision (b);

(3) The judgment for repayment of a condemnation deposit entered cannot earn interest at the legal rate of 10 percent contrary to section 1268.350; and

(4) The trial court erred by not staying execution and quashing the writ of execution because LAUSD obtained a material advantage by representing it would not resist a stay of execution so long as WCM has pending a nonfrivolous action for inverse condemnation.

## DISCUSSION

*Section 1255.280, Subdivision (a)*

WCM argues that the February 17, 1994 judgment is not "final" and, therefore, is unenforceable. This contention is based on section 1255.280, subdivision (a): "Any amount withdrawn by a party pursuant to this article in excess of the amount to which he is entitled as *finally* determined in the eminent domain proceeding shall be paid to the parties entitled thereto. The court shall enter judgment accordingly." (Italics added.) This provision addresses the final determination of the amount of the deposit to which a party is entitled in the eminent domain proceeding. Here, LAUSD was entitled to recover the $47,919,000, subject only to a deduction of WCM's litigation expenses.

Section 1268.610 provides in relevant part: "(a) Subject to subdivision (b), the court shall award the defendant his litigation expenses whenever: [¶] (1) The proceeding is wholly or partly dismissed for any reason; . . . [¶] . . . [¶] (c) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgement." Section 1268.610 is explicitly applicable because a voluntary abandonment is the equivalent of a whole dismissal. (*City of Whittier v. Aramian* (1968) 264 Cal.App.2d 683, 686 [70 Cal.Rptr. 805].) Logically, when the condemnation action is abandoned, the plaintiff is entitled to recover the amount it deposited as the probable amount of compensation pursuant to section 1255.010, and the defendant is entitled to an offset for its litigation expenses as required by section 1268.610, subdivisions (a) and (c). That is what happened here. WCM filed its cost bill within the requisite time and on December 28, 1994, was awarded $3,034,582 in litigation expenses. This sum was deducted from the principal amount of the judgment entered on February 17, 1994. The

calculation and subtraction of the litigation expenses does not defer the entry of the final judgment. Also, as we discuss *post*, the determination of such litigation expenses does not postpone the accrual of interest on the net principal amount due.

WCM was granted its costs on appeal in the prior appeal. "Under CCP § 1268.720, the defendant is entitled to costs on appeal against the plaintiff, whether or not the defendant is the prevailing party, unless the court directs otherwise." (2 Matteoni, Condemnation Practice in Cal. (Cont.Ed.Bar 2d ed. 2000) § 10.39, p. 515.) WCM claims that the present judgment was not "finally determined" within the meaning of section 1255.280, subdivision (a), because the postappeal award of costs on appeal in the amount of $122,165 did not become final until May 27, 1997. In short, WCM argues that the final determination of the judgment must be postponed at least until time for appealing the award of its appellate litigation expenses has expired.

■ Fundamentally, an award of costs on appeal is only an incident of the final judgment from which an appeal is taken and does not undermine the finality of the judgment. (*Wells Fargo & Co. v. City etc. of S. F.* (1944) 25 Cal.2d 37, 44 [152 P.2d 625]; *Oak Grove School Dist. v. City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 697 [32 Cal.Rptr. 288].) The award to WCM of appellate costs is not part of the judgment. "[*T*]*rial court costs* are a mere incident of the main judgment, and not separately enforceable [citation], but after appeal, there may be a new trial with even a further appeal, and the proceedings may cover a long period of time. Accordingly, the award of *costs on appeal*, when properly allowed in the trial court, represents an independent *judgment*, enforceable by any available means. 'It is a complete judgment in itself that finds its origin in the order of an appellate [court] or the Supreme Court affirming or reversing a judgment of a lower court. The right to such judgment comes into being when the order of the reviewing court becomes final. The judgment itself is created when the successful party files his cost bill and his costs are taxed.'" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 826, p. 852, italics in original.)

■ There is a significant distinction between litigation expenses awarded in the first instance and costs on appeal. This distinction undermines WCM's fundamental premise. Section 1268.610, subdivision (b) applies to the final calculation of the net amount of the deposited funds subject to repayment and is mandatory. Section 1268.720 permits the award of litigation expenses on appeal and it is awarded at the discretion of the appellate court. Logically, the finality and enforcement of the judgment does not depend on the eventuality of the discretionary imposition of appellate costs.

*Section 1255.280, Subdivision (b)*

WCM contends that the judgment cannot bear interest at the legal rate. Section 1255.280, subdivisions (a) and (b) provide in relevant part: "(a) Any amount withdrawn by a party pursuant to this article in excess of the amount to which he is entitled as finally determined in the eminent domain proceeding shall be paid to the parties entitled thereto. The court shall enter judgment accordingly. [¶] (b) The judgment so entered shall not include *interest* except in the following cases . . . ." (Italics added.) None of the exceptions are applicable. ▇ The reason that interest is not otherwise permitted with respect to the repayment of sums withdrawn from the deposit is to avoid penalizing defendants who withdraw the probable amount of compensation volitionally deposited by the condemning authority. In other words, the Legislature recognized the inequity of imposing an interest charge on the sum the defendant must repay when the condemning party deposited such funds for the benefit of the defendant. The interest charge disallowed by section 1255.280, subdivision (b) applies only to sums deposited after they are withdrawn and prior to the time defendant is obligated to repay such sums. Section 1255.280, subdivision (b) has nothing to do with the rate of interest that accrues on the final judgment.

▇ The February 17, 1994 final judgment "bears interest at the legal rate from its date of entry by force of law, regardless of whether [or not] it contains a declaration to that effect." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 272, pp. 814-815.) Here the judgment specifically recognizes it will bear postjudgment interest. It states that "offsets shall be deemed to have been made as of the date of entry of this judgment." Therefore, LAUSD is entitled to interest from the date of entry of the judgment on the net principal amount due.

WCM's argument is premised on the false assumption that the judgment here is for eminent domain when, in fact, it is based on the abandonment, warranting LAUSD's recovery of the deposited funds. Simply put, section 1255.280, subdivision (b) has nothing to do with the amount of interest that accrues on the February 17, 1994 judgment.

*Section 1268.350*

WCM argues that the February 17, 1994 judgment does not accrue interest at the legal rate pursuant to section 685.010, subdivision (a) ("Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied"). Instead, WCM claims that if any interest accrues, it is at an "apportionment rate" according to section

1268.350. The term " 'Apportionment rate' means the apportionment rate calculated by the Controller as the rate of earnings by the Surplus Money Investment Fund for each six-month period." (§ 1268.350, subd. (a)(1).) The apportionment rate only applies when there is a judgment for compensation or when the plaintiff takes possession in an eminent domain proceeding. Section 1268.310 provides as follows:

"The compensation awarded in the proceeding shall draw interest, computed as prescribed by Section 1268.350, from the earliest of the following dates:

"(a) The date of entry of judgment.

"(b) The date the plaintiff takes possession of the property.

"(c) The date after which the plaintiff is authorized to take possession of the property as stated in an order for possession."

None of the requisite circumstances exists for application of the "apportionment rate." LAUSD never took possession of the property, never applied for or obtained authority to take possession of it, and WCM did not obtain a judgment for compensation. The assertion that a rate of interest other than the legal rate applies is an obvious misapplication of the plain language of the code.

*Inverse Condemnation Action*

On April 5, 1994, after the entry of the February 17, 1994 judgment, WCM filed an inverse condemnation action alleging that LAUSD's conduct constituted a de facto taking or in the alternative supported a claim for *Klopping* damages.[4] The liability phase of the inverse condemnation action has concluded. There the trial court found: "Plaintiff has proved, however, that the bad faith conduct engaged in by the District . . . unreasonably delayed the condemnation action for approximately four months." We are not informed if the damages phase of the trial has commenced or concluded.

Relying on selective recitation from the trial transcript, WCM argues that LAUSD's counsel represented that the district would not enforce its judgment until after the conclusion of WCM's then prospective inverse condemnation action. We do not find the record to be in accord with WCM's interpretation.

---

[4] *Klopping v. City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].

LAUSD's counsel stated at the January 13, 1994 hearing: "They owe us money. The issue is, how much do they owe. We believe they owe us the full amount of the deposit, less only the litigation expenses. They apparently have a theory . . . that there is[,] in addition to that[,] an element of damages that they would be entitled to compensation for under inverse condemnation. So be it. If they can establish that to the satisfaction of the Court, this Court's going to stay enforcement of the judgment. We concede the Court's authority to do so. And this Court is going to make a further order offsetting against our judgment whatever their entitlement is."

On January 14, 1994, LAUSD's counsel continued: "Your Honor[,] it is the expectation of the School District that if a non-frivolous claim for inverse condemnation is put forward, that this Court would stay the enforcement of the judgment, indeed [LAUSD] would not resist staying the enforcement of the judgment under those circumstances, so that we would have the [*Community Development Com. v.*] *Shuffler* [(1988) 198 Cal.App.3d 450 [243 Cal.Rptr. 719]] circumstances." And further: "The only qualification that I had put forward yesterday, and I urge it again today, is I do believe the Court should examine any inverse condemnation case with a view towards whether it is potentially meritorious or frivolous, because the extreme factual circumstances of this case is such that I think it will be difficult even to state . . . an inverse condemnation case that is colorable. If counsel is able to do so and satisfy the Court, of course[,] there's not going to be an enforcement of the judgment until that case is decided. . . . It's the only qualification I have. And the only distinction in this case and *Shuffler* is that I would like the Court to look at the inverse condemnation claim before we decide whether enforcement of the judgment should be stayed."

On February 17, 1994, the last hearing before the entry of judgment, LAUSD's counsel stated: "The District's position was that [if] an inverse condemnation action was available, and if meritorious, . . . [and] if colorable, that we would expect a stay of the enforcement of a judgment to issue, and that indeed we would not resist enforcement of the *statute*. We conceded the Court's jurisdiction to issue such a stay. . . . There is no ambiguity in the record, that our position has always been that the inverse condemnation action may affect the execution on the judgment. But it does not affect the entry of the judgment." (Italics added.) It is WCM's position that these recitations operate to bar enforcement of the February 17, 1994 judgment from its entry until WCM's pending inverse condemnation action is final, a period of more than six years. To state that proposition is to reveal its absurdity.

First of all, the primary focus of the proceedings upon which WCM relies was the 1994 entry of the judgment. WCM attempted to avoid that result and advocated for a stay of the proceedings to prevent execution on the judgment. The record provided by WCM only includes excerpts of the colloquy between counsel and the court, but it is evident that WCM represented that it would file an inverse condemnation action and requested a stay until it obtained a judgment. The response of LAUSD's counsel was simply an acknowledgement that the court could impose a stay and LAUSD ". . . would not resist enforcement of the *statute*." (Italics added.) The only statute applicable in the context of the January 1994 proceedings is section 1255.280, subdivision (d): "The court may, in its discretion and with such security, if any, as it deems appropriate, grant a party obligated to pay under this section a stay of execution for any amount to be paid to a plaintiff. Such stay of execution shall not exceed one year following entry of judgment under this section." The statutory stay only applies to the repayment of the deposit withdrawn by WCM. And in any event, the stay may only be imposed for one year, far short of what WCM requires to avoid execution of the judgment. The most that WCM can make from stringing together parsed recitations of opposing counsel's statements is that LAUSD would not resist the stay if WCM filed a colorable inverse condemnation action. That acknowledgment, however, is not a concession on which WCM could reasonably rely. It is almost irrelevant, since the argument is predicated on the statements made in 1994 concerning the entry of judgment. There is no evidence that the court did or was inclined to grant a stay and no evidence indicates that WCM relied on any representations of LAUSD's counsel. Furthermore, even if the court issued a statutory stay, it would be for no more than one year, far short of the six years that have expired since the entry of judgment.

Taking another tack, WCM again quotes LAUSD's counsel's statement that the district would not resist a stay if it could "obtain the benefit of the rule in the *Shuffler* case." (*Community Development Com. v. Shuffler, supra,* 198 Cal.App.3d 450 (*Shuffler*).)[5] In *Shuffler*, the commission filed an action to condemn the Shufflers' improved rental properties. Prior to trial, the commission deposited the probable amount of compensation and took possession of the Shufflers' property. The Shufflers withdrew the funds. While in possession, the commission demolished the buildings and eliminated the Shufflers' rental income.

When the action proceeded to trial, the Shufflers were awarded damages in excess of their demand. Thereafter, and within the statutory time limit, the

---

[5]"It's the only qualification I have. And the only distinction in this case and *Shuffler* is that I would like the Court to look at the inverse condemnation claim before we decide whether enforcement of the judgment should be stayed."

commission filed its notice of abandonment of the condemnation proceeding pursuant to section 1268.510. The Shufflers moved to set the abandonment aside and applied for recovery of both the property and damages. Because the Shufflers had previously withdrawn the commission's deposit, they were obligated to repay those funds less their provable litigation expenses and damages proximately caused by the proceeding and its dismissal. The appellate court affirmed the denial of the motion to set aside the abandonment and concluded that the Shufflers could be adequately compensated pursuant to section 1268.620, subdivision (b). In its opinion the *Shuffler* court observed that "the Law Revision Commission Comment to section 1268.620 contains the statement that the section 'is not intended to limit any remedies the defendant may have on an inverse condemnation theory for damage to the property during litigation.'" (*Shuffler, supra,* 198 Cal.App.3d at p. 461.)

The commission and the Shufflers *stipulated* that "so long as there is no order to deliver possession to the Shufflers before a net money judgment is entered in favor of the Commission, the matter of the Commission's entitlement under section 1268.160 to payment of any amount of the withdrawn deposit shall be tried in the same proceeding litigating the matter of the Shufflers' entitlement under sections 1268.610 and 1268.620 to litigation expenses and damages, and the Commission will not seek or claim payment of any net judgment found due the Commission in that proceeding until the Shufflers have exhausted their claims for litigation expenses and damages." (*Shuffler, supra,* 198 Cal.App.3d at p. 462.)

*Shuffler* has no application to the present appeal. LAUSD's counsel did not agree to forego enforcement of its judgment and the parties did not stipulate to do so. WCM's pursuit of its inverse condemnation action is not a bar to the enforcement of the February 17, 1994 judgment.

The judgment entered on February 17, 1994 was affirmed by this court on February 29, 1996. WCM's petition to the California Supreme Court was denied May 15, 1996. The remittitur from this court issued on June 17, 1996. At that time the appeal was final and jurisdiction of the case was transferred back to the trial court. ■ "A general or unqualified affirmance ordinarily sustains the judgment and ends the litigation. The respondent can enforce the judgment, the trial court cannot modify it, and further proceedings are improper." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 742, p. 772.) It is beyond dispute that the judgment is final and entered as originally determined.

## DISPOSITION

The order is affirmed. Respondent is awarded its costs on appeal.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 17, 2001, and appellant's petition for review by the Supreme Court was denied September 19, 2001. Chin, J., did not participate therein.